IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-03108-NRN

CAROLYN PAUL,

Plaintiff,

v.

CHARLES F. CLIGGETT,

Defendant.

**ORDER ON PLAINTIFF'S MOTION TO AMEND COMPLAINT TO ADD CLAIM FOR EXEMPLARY DAMAGES (ECF No. 22)**

**N. Reid Neureiter**
**United States Magistrate Judge**

This matter comes before the Court on Plaintiff's Motion to Amend Complaint to Add Claim for Exemplary Damages ("Motion to Amend"). ECF No. 22. Defendant filed an opposition. ECF No. 24. Plaintiff filed a reply. ECF No. 27. The Court heard oral argument on the motion on June 5, 2024. The Motion to Amend will be **GRANTED**.

**I.  Background**

This case involves the tragic circumstances of a cyclist, Mitchell Hoffman, who was killed when he was struck by a car driven by Defendant Charles F. Cliggett. According to the Complaint, Mr. Hoffman would regularly bicycle on his road bike on Colorado State Highway 135, routinely covering 50 miles a day. ECF No. 3, ¶ 11.

On November 7, 2022, Mr. Hoffman left home late in the morning for his regular ride. *Id.* ¶ 19. That morning, Defendant Cliggett was traveling south on Highway 135 from Crested Butte, driving a 2019 Honda CRV. *Id.* ¶ 22–23. At approximately 12:30

pm, Mr. Hoffman was on his bicycle, traveling southbound on the southbound shoulder, to the right of the "fog line" that delineates the shoulder. *Id.* ¶ 26. Plaintiff alleges that Defendant's vehicle crossed into the southbound shoulder of the highway and struck Mr. Hoffman. *Id.* ¶ 31–32. The carbon frame of Mr. Hoffman's road bicycle was fractured and the bicycle became embedded in the vehicle, with the seat lodged in the passenger-side headlight. *Id.* ¶ 33. Mr. Hoffman was thrown violently into the air. *Id.* ¶ 34. He hit the vehicle's hood and then the "A-Pillar" on the passenger side of the vehicle, and was thrown forward from the force of the impact, coming to a stop some 100 feet ahead of the collision site and approximately 15 feet off of the roadway, in a ditch. *Id.* ¶ 35–36. Mr. Hoffman died at the scene. *Id.* ¶ 41. Injuries included skull fractures and a neck fracture/dislocation. ECF No. 22-6 at 6.

Defendant is alleged to have been driving at or near the posted speed limit of 55 miles per hour. *Id.* ¶ 38–39. Mr. Hoffman was traveling approximately 20 miles per hour on his bicycle at the time of the collision. *Id.* ¶ 40.

The Colorado State Patrol determined that Defendant was at fault for Mr. Hoffman's death. *Id.* ¶ 50. There were no skid marks from the Honda CRV in the area of the collision. *Id.* ¶ 51. There was a skid mark and scrape mark from Mr. Hoffman's bicycle in the area of the shoulder, to the right of the fog line, not in the lane of traffic. *Id.* ¶ 52.

Plaintiff in this case is Carolyn Paul, Mr. Hoffman's surviving spouse. Ms. Paul and Mr. Hoffman had been married in April of 2022. *Id.* ¶ 2. The Complaint includes claims for wrongful death (based upon negligence), and loss of consortium. *Id.* ¶ 57–69.

Plaintiff now seeks to amend her complaint to include a claim for exemplary (punitive) damages under Colorado law.

## II. Standard for Allowing Exemplary Damages Under Colorado Law

Exemplary damages are intended "to punish and penalize [a defendant] for certain wrongful and aggravated conduct and to serve as a warning to other possible offenders." *Beebe v. Pierce*, 521 P.2d 1263, 1264 (1974) (citation omitted). In diversity cases such as this, a motion to amend a complaint to add an exemplary damages claim is governed by Colorado state law. *Klein v. Grynberg*, 44 F.3d 1497, 1503 (10th Cir. 1995). Under Colorado law, a claim for exemplary damages may not be included in any initial claim for relief, and may only added by amendment to the pleadings "after the exchange of initial disclosures . . . and the plaintiff establishes prima facie proof of a triable issue." Colo. Rev. Stat. § 13–21–102(1.5)(a).

Prima facie proof of a triable issue requires "a showing of reasonable likelihood that the issue will ultimately be submitted to the jury for resolution." *Stamp v. Vail*, 172 P.3d 437, 449 (Colo. 2007) (quoting *Leidholt v. Dist. Court*, 619 P.2d 768, 771 n.3 (Colo. 1980)). Such proof is established through discovery or evidentiary means. *Id.* It is ultimately the jury who will decide the merits of an exemplary damages claim. *See id.*; *E&S Liquors, Inc. v. U.S. Fidelity & Guar. Co.*, No. 08-cv-01694-WYD-KLM, 2009 WL 837656, at *2 (D. Colo. Mar. 26, 2009). However, the "question of whether the plaintiff has established sufficient proof to add a claim for exemplary damages lies within the sound discretion of the trial court." *Stamp*, 172 P.3d at 449 (citation omitted). At this stage in the litigation, a plaintiff should be granted "some leeway in establishing his prima facie case." *Leidholt*, 619 P.2d at 769. As the Colorado Supreme Court has

emphasized, "[t]his is a lenient standard. A plaintiff should have an opportunity to test the merits of any claim for relief that is supported by the underlying facts of the case." *Stamp*, 172 P.3d at 450 (citation omitted). *See RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, No. 16-cv-1301-PAB-GPG, 2018 WL 3055772, at *4 (D. Colo. May 10, 2018) ("At this stage of the litigation, the Court is only concerned with whether the evidence, when viewed in the light most favorable to Plaintiffs, is sufficient to make out a *prima facie* case of willful and wanton behavior for the purpose of allowing Plaintiffs to amend their Complaint to include exemplary damages, not whether such evidence is sufficient to defeat a motion for summary judgment or to result in a jury verdict in Plaintiffs' favor."(citation omitted))

A claim for exemplary damages under Colorado law is appropriate where the events resulting in a personal injury are "attended by circumstances of fraud, malice, or willful and wanton conduct." Colo. Rev. Stat. § 13–21–102(1)(a). Willful and wanton conduct is defined as "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." *Id*. § 13–21–102(1)(b). The Colorado Supreme Court has held that "[w]here the defendant is conscious of his conduct and the existing conditions and knew or should have known that injury would result, the statutory requirements" are met. *Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005). "Simple negligence cannot support such an award;" rather, "where a defendant is conscious of both its conduct and the existing conditions, and knew or should have known that injury would result, the requirements of

section 13-21-102 are met." *Blood v. Qwest Servs. Corp.*, 224 P.3d 301, 314 (Colo. App. 2009) (citations omitted).

Conduct is willful and wanton if it is "a dangerous course of action" that is consciously chosen "with knowledge of facts, which to a reasonable mind creates a strong probability that injury to others will result." *Steeves v. Smiley*, 354 P.2d 1011, 1014 (Colo. 1960) (holding that evidence of a driver's decision to travel at a high speed and to pass other cars at night on a single-lane highway despite repeated warnings from his passengers that he was driving too fast was sufficient to present the question of willful and wanton conduct to the jury in a wrongful death action).

## III. Evidence Supporting Prima Facie Case for Exemplary Damages

Plaintiff points to the following evidence to justify amendment to add punitive damages:

- In statements made after the collision, Defendant demonstrated his knowledge that cyclists often used the shoulder of Highway 135, that cyclists were present on the day of the accident, and that the highway was a "damn dangerous road." ECF Nos. 22 at 2; 22-1 at 5; 22-3 at 2.

- The Defendant knew that driving a car on the shoulder of the Highway is dangerous. In particular, Defendant knew it was dangerous to drive a vehicle on the shoulder of Highway 135 when a cyclist is present. ECF No. 22-4 at 3–4.

- The Defendant took no crash avoidance measures, though many were available. For example, Defendant did not use his brakes to slow his car, use his horn to warn Mr. Hoffman, nor move over to give a buffer space to the cyclist he was passing. ECF Nos. 3, ¶ 53; 10, ¶ 27; 22 at 8; 22-7 at 2; 22-9 at 1.

- The Colorado State Patrol Fatal Crash Report indicates that Defendant was driving with his cruise control on at or near the speed limit. ECF No. 22-7 at 6.

- The Defendant never moved his vehicle closer to the centerline of the roadway, away from Mr. Hoffman. ECF Nos.22 at 4; 22-7 at 2.

- The Defendant was found guilty of criminally negligent homicide on November 2, 2023—a felony with a maximum penalty of three years in prison. ECF Nos. 22 at 3; 22-10 at 2.

- This means that a jury determined that Defendant engaged in "criminal negligence." ECF No. 22 at 12. "A person acts with criminal negligence when, through a gross deviation from the standard of care that a reasonable person would exercise, he fails to perceive a substantial and unjustifiable risk that a result will occur or that a circumstance exists." Colo Rev. Stat. § 18-1-501(3).

- The collision occurred because Defendant was "not focused" on the road, leading him to cross into the shoulder, taking Mr. Hoffman's life. ECF No. 22 at 5.

- The Defendant observed Mr. Hoffman in great detail before striking him. *Id.* at 10.

- The Defendant, who is an attorney, represented at least one cyclist who was injured when she was struck by a cyclist on Highway 135. ECF No. 22-3 at 2.

- The final concluding paragraph of the Colorado State Patrol Fatal Crash Report reads as follows:

    - Charles Francis Cliggett Jr. drove a motor vehicle without due regard for the width, grade, curves, corners, traffic, and all other attendant circumstances. I also found Charles Francis Cliggett Jr. to violate Colorado Revised Statute 42-4-1003(1)(b) which states, "The driver of a motor vehicle overtaking a bicyclist proceeding in the same direction shall allow the bicyclist at least a three-foot separation between the right side of the driver's vehicle, including all mirrors or other projections, and the left side of the bicyclist at all time." If Charles Francis Cliggett Jr. had done this, the crash would have been avoided. It is unknown why he drifted on to the shoulder. It is possible Charles Francis Cliggett Jr. target fixated, which is a phenomenon in which a driver becomes so focused on an object that they inadvertently steer in the direction of their gaze. His responsibility in contributing to this crash was clear and present.

    ECF No. 22-6 at 25.

- The cyclist travelling behind Mr. Hoffman saw Defendant's car hit Mr. Hoffman and "there were no brake lights on." ECF No. 22-7 at 6.

Plaintiff argues that these facts are enough to support a claim for exemplary damages. Defendant knew the road was dangerous for cyclists. He was under a statutory duty to take affirmative action to give the cyclist a three-foot buffer zone. He

6

had passed at least one other cyclist on this road before Mr. Hoffman. The weather was clear, and the road was dry. ECF No. 22-5 at 2. He saw Mr. Hoffman and provided a detailed recollection of Mr. Hoffman prior to the collision. Yet, he continued at the speed limit with cruise control activated, taking no actions at all to limit the known risk to the vulnerable cyclists on the road or to avoid the collision.

Defendant, for his part, argues that all this evidence adds up to nothing more than negligence. He argues that there is no evidence that he *consciously* took any course of action in disregard of the potential consequences. ECF No. 24 at 6. As to the criminal conviction, Defendant points out that while he was convicted of criminally negligent homicide, he was *acquitted* of the charge of vehicular homicide. *Id.* at 9. In Defendant's view, the "conviction procedurally stands for the proposition that Defendant failed to perceive a risk, not that he purposefully performed a dangerous course of action with an awareness of the risk." *Id.* at 8. Defendant also argues that there is some evidence that he made an avoidance maneuver before the collision. *Id.* at 9.

IV. **Case Law on Whether Evidence is Sufficient to Support Exemplary Damages**

This is a close case, and other decisions in this district and Colorado state courts provide some guidance as to whether the facts as alleged are sufficient to allow amendment to add a claim for exemplary damages.

For example, in *Rowan v. Vail Holdings, Inc.*, a federal district court held that the question of willful and wanton conduct should have been submitted to the jury where a ski area operator left an unprotected picnic deck at the bottom of a ski testing course despite several prior "close calls" with the deck, and had required the deceased skier to sign a release of liability on the final day of testing. *Rowan v. Vail Holdings, Inc.*, 31 F.Supp.2d 889, 900 (D. Colo. 1998).

And in *Stamp v. Vail*, the Colorado Supreme Court held that a trial court had abused its discretion in denying the parents of a deceased youth ski racer the right to amend their complaint to add a claim for exemplary damages against a ski area. 172 P.3d at 450. The skier had been killed by a snowmobile operated by a ski area employee next to a ski race course. *Id.* at 441. Facts (some disputed) supporting the exemplary damages claim included that the snowmobile driver was traveling in excess of 20 miles per hour as he approached a blind knoll, that the snowmobile may have lifted off the ground as it cleared the knoll, that the snowmobile driver had not turned on the snowmobile's siren prior to the collision, and whether the driver had stopped for other skiers below another blind knoll. *Id.* The court concluded that its review of the discovery documents "reveal[ed] issues of fact that establish prima facie proof of Vail's wanton and willful conduct, and thus prima facie proof of a triable issue of exemplary damages." 172 P.3d at 450.

In *Gould v Union Pacific Railroad Co.*, this Court granted leave to add a claim for exemplary damages against a railroad where rocks had fallen from a railroad bridge when a work crew was doing track maintenance, striking a car below and allegedly causing personal injury. No. 19-cv-02326-PAB-NRN, 2021 WL 5181966, at *3 (Colo. Feb. 12. 2021). The railroad did not dispute its negligence, but challenged whether there was sufficient evidence to establish a prima facie case for exemplary damages. *Id.* at *2. The railroad's employees had testified that they knew it was dangerous not to have adequate safety protection on a bridge to protect drivers that were present below. *Id.* In the five years leading up to the accident, there had been 28 reports of rocks or other items falling from bridges controlled by the railroad. *Id.* There were alternative

8

means to protect cars passing below the bridge, including placing netting to surround the bridge to act as a "second skin" to protect pedestrians and passing vehicles from falling rocks. *Id.* at *3. Or, the railroad could have implemented lane control or traffic restrictions under the bridge while it completed its work. *Id.* But the railroad implemented none of these alternative safety precautions, and instead relied on an outdated (and arguably deficient) method of protection—plywood boards. *Id.* This Court determined that because there were numerous prior incidents of rocks falling from the railroad's bridges, and the railroad started work on the bridge without taking every reasonable precaution to prevent falling rocks, a condition the company knew to be dangerous, there was a reasonable likelihood that the exemplary damages claim would go to the jury. *Id.* Therefore, the amendment was allowed. *Id*.

In another train-related case, *Nitchman v. Union Pacific Railroad Co., Inc.*, a train crashed into a car at a dangerous crossing. No. 05-cv-01219-EWN-MEH, 2007 WL 389899, at *1 (D. Colo. Feb. 1, 2007). Prima facie evidence showed that the train did not sound its whistle until it was too late for the plaintiff to recognize the large engine bearing down on him. *Id.* The train's brakeman was supposed to warn oncoming motorists of the train's approach but did not do so. *Id.* The entire train crew was inattentive and the inattention was a proximate cause of the collision. *Id.* Finally, each of the members of the train crew was aware, prior to the accident, that this was a dangerous crossing because of inherent visibility problems from the perspectives of both a motorist and a train crew. *Id.* They knew that they needed to take extra safety precautions at this crossing. *Id*.

In *Nitchman*, the railroad argued that the train crew's inattention and failure to give a warning was nothing more than negligence, and could not support an award of exemplary damages. *Id.* at *4. But my colleague Judge Hegarty disagreed, stating the "crucial inquiry to this Court is whether the allegedly negligent actions of Defendant's employees occurred with their knowledge of the existing dangerous conditions." *Id*. Accepting for purposes of the amendment that the train crew's negligent omissions were committed with knowledge of the dangerous circumstances, Judge Hegarty allowed the amendment. *Id*. at *5.

Conversely, in the case of *Clem v. Schultz*, the court denied the right to amend and add exemplary damages. No. 19-CV-03570-REB-KLM, 2022 WL 1055551, at *5 (D. Colo. Apr. 8, 2022), *report and recommendation adopted*, No. 19-CV-03570-REB-KLM, 2022 WL 3099193 (D. Colo. May 25, 2022). In that case, my colleague Judge Mix denied a motion to amend to add an exemplary damages claim in a case involving a semi-truck crash. *Id.* There, evidence obtained in discovery showed that the defendant driver operated a truck weighing approximately 78,000 pounds; that he suffered significant hearing loss and had removed one of his hearing aids around the time of the accident; that he had used his cellphone before the time of the accident; that he had seen a vehicle fire, smoke, and a line of parked cars in the right hand lane approximately one mile away prior to the collision; that he knew that he could cause catastrophic injuries if he were to rear-end another vehicle; and that he maintained his cruise control at sixty-five miles per hour at the time of the collision. *Id.* at *2. The plaintiff in that case argued that such facts supported an inference of willful and wanton conduct because the driver "was conscious of both his conduct and the existing

10

conditions and knew or should have known that his actions would cause injuries." *Id*. The defendant, for his part, argued that the accident resulted from his mistaken and negligent belief that he had a clear lane of traffic in front of him and not from any deliberate misconduct. *Id*. at *3.

In *Clem*, Judge Mix found the prima facie evidence of willful and wanton conduct wanting. *Id.* at *3. The use of the cellphone had happened some twenty-four minutes before the collision. *Id.* The removal of the hearing aid did not factor as a cause of the crash. *Id.* Judge Mix was unpersuaded that the weight of the truck and the knowledge that the vehicle could cause injury in the event of an accident could constitute willful and wanton conduct justifying exemplary damages:

> Understanding, in the abstract, that vehicular accidents involving large commercial vehicles may result in injury does not establish that [the defendant] knew or should have known that injury would result from his conduct and the existing conditions present here. Were the Court to decide otherwise, such a conclusion would likely be overly broad and may include conduct beyond that contemplated by the statute. *See* Colo. Rev. Stat. § 13–21–102(1)(b).

*Id.* The Court concluded that "apparent misjudgment or inattentiveness" was not tantamount to "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to the consequences or the rights and safety of others." *Id*. (quoting Colo. Rev. Stat. § 13–21–102(1)(b)). In Judge Mix's view, "at most" this evidence supported a "reasonable inference of negligence." *Id*.

*Wortman v. Reinsbach* is similar to *Clem* in both its facts and outcome. No. 18-CV-02419-MSK-NYW, 2019 WL 7833968 (D. Colo. Oct. 17, 2019), *report and recommendation adopted*, No. 18-CV-02419-MSK-NYW, 2020 WL 486956 (D. Colo. Jan. 30, 2020). In *Wortman*, a vehicle fire on a highway generated visible smoke and

11

caused traffic, including the plaintiffs' vehicle, to come to a "dead stop." *Id*. at *3. The defendant, who was driving a tractor trailer at about 65 miles per hour, did not see the vehicle fire or the stopped traffic soon enough to prevent a rear-end collision with the plaintiffs, even though both the traffic and the fire were visible from approximately 4,250 feet away. *Id*. The court rejected the argument that the driver's failure to pay attention was "deliberate," and concluded that these facts only established a reasonable inference of negligence. *Id*. at *4.

## V. Decision

This is an admittedly close case. Defendant argues that there is no evidence that he made a conscious or purposeful decision to do anything, and therefore the requisite mental state necessary for an award for exemplary damages is not present.  But a number of the cases cited above show that a failure to act, under circumstances where the defendant perceives a danger or risk to others, can justify an award of exemplary damages. For example, in *Stamp*, the court cited the defendant snowmobile driver's failure to turn on the siren—a failure to act in the face of known dangerous conditions— as evidence supporting recklessness or wanton and willful conduct by the defendant. 172 P.3d at 450. Traveling 20 miles per hour on a snowmobile might not constitute reckless conduct by itself. However, if the driver was traveling uphill at 20 miles an hour, near a blind knoll, without a siren, with knowledge that vulnerable youth skiers were in the vicinity, these circumstances could constitute a situation where a failure to slow down or use the siren might justify an exemplary award. *Id.*

In *Nitchman*, the defendant argued that the train brakeman's failure to blow the warning whistle was nothing more than negligence. 2007 WL 389899, at *4. In the abstract, one might reasonably conclude that this inaction was not purposeful conduct.

12

But Judge Hegarty rejected that abstract proposition, holding instead that the failure to act needed to be analyzed in the context of the entirety of the surrounding circumstances: each member of the train's crew knew that this particular crossing was dangerous, knew that they needed to take extra safety precautions, and knew that crossing presented inherent visibility problems for motorists. *Id.* at *1, *4. Thus, the defendant's alleged failure to act "with their knowledge of the existing dangerous conditions" allowed for amendment to add a claim for exemplary damages. *Id.* at *4.

     A close review of the discovery material submitted discloses that that there is at least a prima facie case that the Defendant failed to take protective action under circumstances that he knew were dangerous to nearby cyclists. Defendant knew this was a dangerous road for cyclists. As an attorney, he had previously represented a cyclist injured on this road. He had passed one cyclist prior to hitting Mr. Hoffman. He says the he observed Mr. Hoffman prior to the collision. He was on notice (or constructive notice), through Colo. Rev. Stat. 42-4-1003(1)(B), that a motorist passing a cyclist must allow a three-foot separation between the right side of the vehicle and the bicycle. This law is obviously intended to create a buffer, so that if there is some misjudgment by the vehicle operator, or some slight deviation by the cyclist, no collision will occur.  In this circumstance, Plaintiff has presented evidence that Defendant failed to follow the law by giving the requisite three-foot separation, and that Defendant failed to slow or take his vehicle off cruise control to ensure that he could safely pass the cyclist and give the legally mandated adequate separation. Instead, the prima facie evidence shows that without slowing, he apparently cut the apex of a sweeping right hand curve, crossed over the fog line and crashed into Mr. Hoffman's bicycle and ended

13

his life. Under these circumstances, and especially in light of the low threshold for allowing amendment to add exemplary damages (a "lenient standard"), where Plaintiff has alleged that Defendant knew that a deviation of just one or two feet by a car could result in a life lost, and the Defendant here did not slow down or take other actions to minimize the risk to a vulnerable cyclist of which he was aware, Plaintiff has alleged facts sufficient to establish prima facie proof of a triable issue of exemplary damages, an award of which would "serve as a warning to other possible offenders." *Beebe*, 521 P.2d at 1264.

Therefore, the Plaintiff's Motion to Amend will be granted and the Plaintiff shall file a clean version of the Amended Complaint which the clerk shall accept.

Dated this 12th day of June, 2024.   BY THE COURT:

*N. Reid Neureiter*
N. Reid Neureiter
United States Magistrate Judge